IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| V. | § | CASE NO. 4:09-CR-37(1) |
| | § | Judge Crone |
| RONALD WAYNE RICHARD, JR. (1) | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant's Motion to Suppress Statements and Evidence (Dkt. #140). Having considered the relevant pleadings, and argument and testimony given at the September 29, 2009 hearing, the Court is of the opinion that Defendant's motion should be denied.[1]

**BACKGROUND**

Defendant seeks to suppress statements made to law enforcement on the grounds the statements were not given freely or voluntarily due to improper inducement by law enforcement agents. MOTION at 1. The Government contends that Defendant was lawfully detained and arrested because of his involvement in negotiating the purchase of methamphetamine from a source of supply in the Dallas, Texas, area. RESPONSE at 1. The Government argues that once arrested, Defendant was advised of his constitutional rights, voluntarily waived his rights, and agreed to speak to and assist law enforcement freely and voluntarily without any promises or assurances of leniency or release by agents of the Drug Enforcement Agency ("DEA") or the United States Attorney's Office.

---

[1] The Court conducted a hearing on June 18, 2009, on a previous motion to suppress filed by Defendant. The Court issued a Report and Recommendation (Dkt. #120) on July 1, 2009, denying Defendant's motion, which was adopted by the District Judge's July 20, 2009 Order (Dkt. #133). The Court found that probable cause existed to believe Defendant's vehicle contained currency intended for the purchase of methamphetamine. Further, the Court found that Defendant was properly administered his *Miranda* rights and freely and knowingly waived those rights before making statements to law enforcement.

*Id.* at 2.

On September 29, 2009, the Court held a hearing on Defendant's motion. The Government offered the testimony of DEA Special Agent Tahariiq Gray ("Gray"), DEA Task Force Agent Chris Frosch ("Frosch") and Assistant United States Attorney Ernest Gonzalez ("Gonzalez"). Defendant testified on his own behalf.

Gray participated in the surveillance and subsequent arrest of Defendant. When Gray arrived at the scene of the arrest, Defendant was sitting on the curb and DEA Special Agent Keynavanh Sayasone ("Sayasone") advised Defendant of his rights, using a DEA 13-A card.[2] Gray conversed with the Defendant at the scene while the vehicle was being searched, and Defendant cooperated freely and never asked for an attorney. Gray transported Defendant to DEA's Dallas Field Office, where he was held in a processing room and interviewed by no more than three to four officers at any time. At the field office, Gray attempted to find out the identity and location of Defendant's source of methamphetamine. Defendant was reluctant to cooperate at this time. No guns were drawn and Defendant was under no threat of physical injury. At no time were any threats, promises of leniency, or promises of release made to Defendant.

According to Gray, Defendant inquired into whether his cooperation would lead to his release. Gray told Defendant that nothing could be promised to him, but that Gray would advise the United States Attorney's Office of any cooperation on the part of Defendant, and the attorney prosecuting the case would advise the Court of Defendant's cooperation, which could lead to a downward departure in sentencing. Gray advised Defendant that this did not mean that Defendant

---

[2] Sayasone testified at the June 18, 2009 hearing that he read Defendant his *Miranda* rights from the DEA 13-A card.

was guaranteed any type of leniency or release. Defendant requested to speak to the United States Attorney in charge of the case, so Gray telephoned Gonzalez and allowed Defendant to speak with him. After Gonzalez spoke with Defendant, Gonzalez advised Gray that he told Defendant that he could make no promises, but that he would take note of any cooperation on the part of Defendant.

At the Dallas Field Office, Gray met with Defendant along with other law enforcement officers. The meeting occurred in a processing room, where two to four officers met with Defendant over a one-and-a-half hour period. During this time period, Defendant's source called Defendant's cell phone. Defendant agreed to cooperate with law enforcement by calling back and identifying his methamphetamine source. Gray and Frosch were present when Defendant made the phone call and during a subsequent car trip to identify the location of Defendant's source. Gray was with Defendant until approximately midnight when Defendant was put in a local jail for an overnight stay. At no time did Gray or any other member of law enforcement make Defendant a promise of any kind, and at no time during the interview and subsequent cooperation did Defendant request an attorney.

Gonzalez testified that he spoke to Defendant after receiving a call on his cell phone from Gray. Defendant asked if Gonzalez would release him if he cooperated with authorities. Gonzalez told Defendant that he could not make him any promises of leniency or release him, but that if Defendant did cooperate, he would take that into consideration and let the Court know that Defendant cooperated with authorities. Gonzalez told Gray what he had just told Defendant. At no time did Gonzalez make Defendant any promises of leniency or release in exchange for his cooperation.

Frosch testified that he was present during the arrest of Defendant, during the phone calls placed by Defendant to his source, and during the subsequent cooperation by Defendant. Defendant

3

met with Frosch and Gray in a small room that comfortably contained three to four people at any one time. Frosch accompanied Defendant and Gray until approximately 1:30 a.m. when Defendant was booked into the local jail for his overnight stay. At no time did Frosch or any other member of law enforcement make Defendant a promise of any kind, and at no time during the interview and subsequent cooperation did Defendant request an attorney.

Defendant testified on his own behalf and disagreed with some of the testimony provided by the Government. Defendant stated that he was read his rights by officers at the scene of the arrest and he was aware of his rights at that time. Defendant was transported to the DEA Dallas Field Office by Gray and another officer. Defendant testified that he requested to speak to an attorney at that time, but Gray denied the request. Defendant was interviewed in a room that contained twelve to fifteen officers at any one time. Defendant requested to speak to an attorney three to four times while at the office, but his requests were denied. Gray promised Defendant that if he cooperated with law enforcement, Defendant and the woman he was traveling with would be released. Defendant requested that this deal be put in writing, but Gray and another officer refused. Defendant decided to cooperate with law enforcement, but he stated that Gray and other officers broke their promise to release him.

Defendant testified that he has two prior federal narcotics convictions. In both prior cases, he received a downward departure in sentencing for his cooperation with authorities. He recalled receiving a proffer letter in one of the cases, and in both cases an attorney for the government negotiated the terms of the agreement.

**ANALYSIS**

In *Miranda v. Arizona*, the Supreme Court concluded that the possibility of coercion inherent

in custodial interrogations raises the risk that a suspect's right against self-incrimination might be violated. *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). To protect against this danger, *Miranda* creates a presumption that a confession given during a custodial interrogation is coerced, in the absence of specific warnings. *United States v. Patone*, 542 U.S. 630, 639 (2004). A suspect may waive his right to remain silent, but the waiver must be made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444.

The inquiry whether a valid waiver of *Miranda* warnings has occurred has two elements. *United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005)(citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id*. "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. A statement is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice. *United States v. Scurlock*, 52 F.3d 531, 536 (5th Cir. 1995). The Government has the burden of showing by a preponderance of the evidence that the statements were voluntarily made. *Id*.

After considering the pleadings and the testimony presented at the hearing, the Court recommends that Defendant's Motion to Suppress be denied. The Court finds that Defendant made a knowing and voluntary waiver of his *Miranda* rights and was not coerced or threatened by law enforcement officers to do so. The Defendant testified that he was read and understood his rights. Any indication by law enforcement that Defendant could somehow help his case by cooperating is simply not sufficient to show that Defendant did not act under his own free and informed will. *See United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996)(concluding that an agreement that

5

the United States Attorney would be apprised of a defendant's cooperation, coupled with an express admonition that a defendant would still go to prison, does not constitute a promise of leniency); *see also United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)(concluding that a statement that the accused's cooperation will be made known to the court is an insufficient inducement to render subsequent confession involuntary); *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1348 (5th Cir. 1994)(advising accused that there are advantages to cooperating does not render a confession involuntary).

The testimony given by the Government witnesses outweighs the completely contradictory testimony given by Defendant. As the burden is a preponderance of the evidence, the question is whether or not it is probably true that the Defendant was extended his *Miranda* warnings and knowledgeably and voluntarily waived them. In viewing the testimony, the Court finds that the Government witnesses are telling the truth and Defendant is not. Defendant is well versed in how the system works in regards to federal drug charges, as he cooperated with the Government in two separate federal cases. By Defendant's own admission, he understands *Miranda* warnings. Defendant testified that he received a downward departure in sentencing on both of his prior drug convictions. According to Defendant, these deals were negotiated by the United States Attorney's Office, not by law enforcement. The Court does not believe that Defendant would cooperate with law enforcement on a promise made by an officer, considering his prior experience in the federal judicial system, and his admission that Gonzalez told him that no deal could be made.[3] Therefore,

---

[3] At the June 18, 2009 hearing on Defendant's prior motion to suppress, Gray testified that Defendant cooperated knowingly and freely and never asked for an attorney. Gray stated that Defendant was not forced or coerced to cooperate and no promises were made to Defendant in exchange for his cooperation. The Court notes that Defendant's prior counsel did not dispute Gray's testimony and did not offer any testimony or evidence to the contrary.

the Court did not hear circumstances that convinced it that the Defendant's free will was jeopardized in any way or that any promises were made to the Defendant or broken by the Government.

The Government has satisfied its burden of showing that Defendant knowingly and voluntarily waived his rights prior to making the statements he seeks to suppress. Therefore, there is no basis for suppression.

### RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress should be DENIED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 5th day of October, 2009.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE