| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:09-CR-37(01) |
| | § | |
| RONALD WAYNE RICHARD, JR. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Ronald Wayne Richard, Jr.'s ("Richard") Motion for Compassionate Release/Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) and 4205(G), and The First Step Act of 2018 (#213), wherein Richard requests that the court modify his sentence and immediately release him to home confinement due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#214). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, Probation's recommendation, the Government's response, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.   Background

On March 11, 2009, a federal grand jury sitting in the Eastern District of Texas returned a five-count Indictment charging Richard and three others with participating in a Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine and in a Conspiracy to Possess with Intent to Distribute Cocaine Base, both in violation of 21 U.S.C. § 846. On October 14, 2009, Richard pleaded guilty to Count 1 of the Indictment pursuant to a binding plea agreement. In the Statement of Facts in Support of Plea Agreement, Richard stipulated that he and others made an agreement to distribute and possess with the intent to manufacture and distribute

at least 500 grams of methamphetamine "Ice" and 150 grams or more of cocaine base. On February 3, 2010, Richard was sentenced to 240 months' imprisonment, followed by a 10-year term of supervised release. Richard subsequently filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, which was dismissed with prejudice on September 14, 2012, and the dismissal was affirmed on appeal on May 31, 2013. He is currently housed at Federal Correctional Institution Oakdale I in Oakdale, Louisiana ("FCI Oakdale I"). Richard's projected release date is April 19, 2026.

II.  Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Richard concedes that he has not submitted a request for compassionate release to the warden of FCI Oakdale I, contending that the court need not and should not wait for him to

exhaust his administrative remedies under § 3582(c)(1)(A) because of the "public health catastrophe." Contrary to his assertions, Richard is foreclosed from obtaining relief because he has not submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period, as suggested by Richard. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have authority to grant the relief Richard requests. Moreover, even if he had complied with the exhaustion requirement before filing the present motion, nothing in his motion

indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Richard, age 52, contends that he suffers from:

> incurable, progressive diseases, from which [he] will never recover, to wit: Hypertension, Hyperlipidemia, Coronary Artery Disease (CAD), Hypothyroid, Diastolic Dysfunction, Pulmonary Hypertension, Chronic Obstructive Pulmonary Disease, Interstitial Lung Disease (ILD), Dilated Cardiomyopathy, Supraventricular Tachycardia by ECG, Irregular Heartbeat, Emphysema, Aortic Artherosclerosis, and History of Squamous Cell Carcinoma (SCC) of Skin.

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Although Richard asserts that he is suffering from myriad diseases, he provides no details or documentation in support of any of these claims. Probation's contact with the BOP Supervisory Attorney at the Houston Consolidated Legal Center yielded 421 medical documents pertaining to Richard's care from 2017 through 2020. A review of those records indicated that Richard received treatment during that time period only for gastrointestinal issues, hypertension, knee pain/procedures, a persistent ingrown toenail, hyperlipidemia, and some dental pain/procedures. A review of Richard's Presentence Investigation Report ("PSR"), prepared in 2010, reveals that he reported having been diagnosed with high blood pressure in 2002 and with congestive heart

failure in 2007. He also reported that precancerous cells were found on his esophagus in 2009; however, there is no indication that these cells later developed into cancer. Thus, these conditions did not impair or prevent him from continuing to engage in criminal activities prior to his arrest in 2009. Furthermore, it appears that Richard has greatly exaggerated the nature and severity of his current medical problems. There is no suggestion in the medical records that he suffers from any lung or thyroid ailments. He reported having a history of hypertension, hyperlipidemia, and cardiac disease when sentenced in 2010, but these conditions are now controlled by medication. As Probation noted, "his medical conditions are being treated appropriately with medication and do not appear to be terminal or as dire as indicated in the motion." Probation further confirms that Richard is ambulatory and is working in food service, which requires additional screening. Thus, Richard's medical summary does not meet the criteria listed in the guidelines. His medical conditions are not terminal, nor do they substantially diminish his ability to provide self-care.

Richard's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP

Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Richard for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Richard's situation. Probation reports that Richard tested negative for COVID-19 on June 9, 2020, and was subsequently quarantined for 14 days without fever or symptoms of the virus. Richard is now in the "lock-down" Allen housing unit at FCI Oakdale I, and BOP officials are testing those inmates out of quarantine status. As of July 30, 2020, the figures available at www.bop.gov list 3 inmates and 8 staff members at FCI Oakdale I as currently positive for COVID-19. The figures also indicate that 207 inmates and 20 staff have recovered, while 7 inmates have succumbed to the disease. Therefore, although Richard expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex.

June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Thus, Richard has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). The nature and circumstances of Richard's offense of conviction entails his participation in an interstate conspiracy to distribute at least 500 grams of methamphetamine "Ice" and at least 150 grams of cocaine base. His role in the conspiracy was to purchase multi-pound quantities of methamphetamine from a co-defendant in the Dallas area and transport the methamphetamine to Louisiana for distribution. He was arrested after he traveled to Dallas with $32,040.00 in currency to purchase 1.5 pounds of methamphetamine from a supplier, which he planned to transport back to Baton Rouge, Louisiana, for subsequent distribution. According to his PSR, Richard estimated purchasing 1 pound of methamphetamine from the same supplier on at least 6 prior occasions. Richard is classified as a career offender and has an extensive criminal history, including prior convictions for possession

of marijuana, battery, conspiracy to possess with intent to distribute and distribution of cocaine, marijuana, and Ecstacy, conspiracy to possess with intent to distribute marijuana, operating a vehicle while intoxicated (2), possession of cocaine, and possession of methamphetamine. He also has a history of substance abuse and was a regular user of both marijuana and methamphetamine until he was arrested in 2009. Under the circumstances, the court cannot conclude that Richard would not pose a danger to the safety of any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,247 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020)

("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Richard's track record is similarly a poor one.

In short, Richard has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions

of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id*.

III. Conclusion

In accordance with the foregoing analysis, Richard's Motion for Compassionate Release/Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) and 4205(G), and The First Step Act of 2018 (#213) is DENIED.

SIGNED at Beaumont, Texas, this 31st day of July, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE